Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in the U.S.
DISTRICT COURT at Seattle, Washington.

*October 17* 20 *18*

WILLIAM M. McCOOL, Clerk

By _____ Deputy

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JEFF TRAN a/k/a TRUNG TRAN,

Defendant.

No. **CR18-249** RSM

**INDICTMENT**

The Grand Jury charges that:

**COUNTS 1-5**
**(Wire Fraud)**

**A.    Background**

1.    At all times relevant to the Indictment, defendant JEFF TRAN ("TRAN") was employed by Microsoft Corporation ("Microsoft") as Director of Sports Marketing and Alliances.  TRAN oversaw Microsoft's promotional relationships with certain sports organizations, including the National Football League ("NFL").  In this capacity, TRAN was responsible for requesting that Microsoft authorize payments to third-party service providers ("vendors"), and for overseeing the distribution of those payments.

2.    Under the promotional agreement between Microsoft and the NFL, the NFL provided Microsoft with certain benefits, including the right to purchase Super

United States v. Jeff Tran
Indictment - 1

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Bowl tickets. The Super Bowl tickets purchased by Microsoft under the promotional

2   agreement were Microsoft's property, and Microsoft policy required that the tickets be

3   used for Microsoft's benefit. The NFL distributed Microsoft's Super Bowl tickets to a

4   promotional company called Wasserman Media Group ("Wasserman"), with the

5   understanding that Wasserman would then allocate the tickets at Microsoft's direction,

6   and for Microsoft's benefit. TRAN was the Microsoft employee responsible for

7   allocating the tickets.

8        3.     Wasserman provided various promotional services to Microsoft in return

9   for management fees. Wasserman also facilitated payments to other vendors that worked

10   on promotional events Wasserman managed. Under this arrangement, TRAN would

11   submit a purchase order to Microsoft requesting that funds be transferred to Wasserman

12   to fund obligations to Wasserman or the other vendors. Based on these purchase orders,

13   Microsoft would make bulk payments to Wasserman. Wasserman would then distribute

14   the money to vendors as directed by TRAN. TRAN's point of contact at Wasserman was

15   a Wasserman employee with the initials "B.H."

16 **B.**     **The Scheme to Defraud**

17        4.     Beginning at a time unknown, but not later than in or around January 2017,

18   and continuing until at least July 28, 2017, at Redmond, within the Western District of

19   Washington, and elsewhere, Jeff TRAN, a/k/a Trung TRAN, devised and intended to

20   devise a scheme and artifice to defraud Microsoft, a corporation headquartered in

21   Redmond, Washington, and others, and to obtain money and property by means of

22   materially false and fraudulent pretenses, representations and promises.

23        5.     The essence of the scheme and artifice to defraud was for TRAN to use his

24   position at Microsoft to fraudulently convert Microsoft money and property to his own

25   use, by falsely representing and pretending that the money and property would be used

26   for legitimate Microsoft business purposes. The scheme included the theft and sale of

27   Microsoft-owned Super Bowl tickets; the misappropriation and attempted

28

United States v. Jeff Tran
Indictment - 2

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   misappropriation of nearly $1.5 million through the creation and submission of fraudulent

2   invoices, and the unauthorized use of other Microsoft assets for TRAN's own benefit.

3   **C.    Manner and Means**

4       The following conduct was part of TRAN's scheme and artifice to defraud:

5       **1.    TRAN's Misappropriation of Super Bowl Tickets**

6       6.    In or about January 2017, TRAN and Wasserman representative B.H.

7   discussed how Wasserman would distribute the Super Bowl tickets Wasserman expected

8   to receive on behalf of Microsoft from the NFL.  TRAN directed B.H. to personally

9   deliver the tickets to TRAN, and represented that TRAN would then distribute the tickets

10  to Microsoft employees.  TRAN provided B.H. with a list of Microsoft employees who,

11  TRAN represented, would receive the tickets.  In particular, the list indicated that TRAN

12  would provide blocks of tickets to two Microsoft employees ("Manager 1" and "Manager

13  2"), and that Manager 1 and Manager 2 would then distribute the tickets to Microsoft

14  employees in their work groups.

15      7.    Contrary to his representations, TRAN did not provide the blocks of tickets

16  to Manager 1 or Manager 2.  Instead, TRAN sold approximately 62 Microsoft Super

17  Bowl tickets for more than $200,000 through a New Jersey-based ticket broker.  TRAN

18  shipped the tickets to the broker using shipping labels the broker had provided TRAN in

19  an email sent by interstate wire communication.  Tran kept the proceeds of the sales for

20  his own personal use.

21      8.    TRAN provided several Microsoft-purchased tickets to Super Bowl-related

22  events to a Microsoft employee ("Employee 1").  Because Employee 1 intended to use

23  some of the tickets for Employee 1's family members, Employee 1 agreed to pay the cost

24  of the tickets.  TRAN falsely told Employee 1 that TRAN had purchased the tickets using

25  TRAN's personal credit card (when in fact the tickets had been purchased by Microsoft),

26  and instructed Employee 1 to pay TRAN $12,400 directly to cover the cost of the tickets.

27  Employee 1 paid the $12,400 to TRAN, who kept the proceeds for his own personal use.

28  

United States v. Jeff Tran
Indictment - 3

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  **2.    The Fraudulent $775,000 Invoice**

2      9.    On or about March 7, 2017, TRAN prepared and submitted to Microsoft a

3  fraudulent purchase order requesting that Microsoft pay $999,000 to Wasserman,

4  purportedly for NFL-related marketing activities.  TRAN knowingly included fictitious

5  entries on the purchase order describing expenses that TRAN knew did not reflect

6  genuine Microsoft obligations to Wasserman or other vendors.  At TRAN's request,

7  Microsoft approved the purchase order and distributed $999,000 to Wasserman.

8      10.    TRAN contacted S.S., a representative of a consulting company and vendor

9  to Microsoft known as Sandoval Ventures ("Sandoval").  TRAN asked S.S. to prepare

10  and send to Wasserman a Sandoval invoice purporting to bill Microsoft (via Wasserman)

11  $775,000 for services supposedly rendered on behalf of Microsoft, when in fact Sandoval

12  had rendered no such services.

13      11.    TRAN falsely represented to S.S., and Wasserman's B.H., that the purpose

14  of the invoice was to process a payment to another unnamed vendor that had rendered

15  legitimate services on behalf of Microsoft.  TRAN falsely told S.S. and B.H. that the

16  unnamed vendor could not invoice Microsoft or Wasserman directly because of a limit

17  placed by Microsoft on the number of vendors that can be approved for a particular

18  project.  TRAN told S.S. that, if S.S. did not agree to the arrangement, TRAN would need

19  to terminate Microsoft's relationship with Sandoval so that TRAN could place the new

20  unnamed vendor on Microsoft's approved vendor list.

21      12.    As requested by TRAN, on or about March 12, 2017, S.S. sent Wasserman

22  a $775,000 invoice, purportedly for "Talent Fees and Services per Microsoft Request."

23  At TRAN's direction, Wasserman's B.H. paid $775,000 to Sandoval Ventures out of the

24  funds Microsoft had previously distributed to Wasserman under the fraudulent March 7,

25  2017, purchase order.

26      13.    After Wasserman paid the $775,000 invoice to Sandoval, TRAN directed

27  S.S. to hand-deliver to TRAN a $775,000 check made out to TRAN.  TRAN told S.S.

28

United States v. Jeff Tran
Indictment - 4

1 | that TRAN would then forward the money to the unnamed third-party vendor.  At S.S.'s

2 | request, TRAN sent S.S., via interstate wire transmission, an IRS Form W-9 listing

3 | TRAN's name and other personal identifying information.  S.S. then delivered the

4 | $775,000 check to TRAN.  On or about March 21, 2017, TRAN deposited the check into

5 | his own bank account, with the intent to use the money for his own purposes.

6 |      **3.**     **TRAN's July 2017 Attempt to Submit a Second Fraudulent Invoice**

7 |      14.     In or around July 2017, TRAN requested that Sandoval's S.S. prepare and

8 | submit to Wasserman a second Sandoval invoice purporting to bill for services provided

9 | on behalf of Microsoft, when in fact Sandoval had provided no such services.  TRAN

10 | stated that the invoice should be made out in the amount of $670,000, and further stated

11 | that TRAN planned to request another $500,000 invoice under this arrangement in the

12 | upcoming months.  TRAN again represented to S.S. and Wasserman's B.H. that, as with

13 | the previous invoice, TRAN needed Sandoval to issue the invoice so that TRAN could

14 | make payment to a legitimate vendor that was not on Microsoft's approved vendor list.

15 |      15.     TRAN told S.S. and B.H. that the vendor that would ultimately receive the

16 | $670,000 payment was called "Trade Craft Consulting."  In fact, Trade Craft Consulting

17 | was a trade name registered to Tranmerica, a Washington corporation controlled by

18 | TRAN.  TRAN had registered this trade name to create the false appearance that an

19 | independent entity was receiving the payment.

20 |      16.     On or about July 6, 2017, TRAN opened a business bank account at First

21 | Tech Bank in the name of "Tranmerica, Inc.," and listed Trade Craft Consulting as a

22 | trade name of Tranmerica, Inc.  TRAN then sought authorization from the bank to

23 | deposit checks made out to Trade Craft Consulting.

24 |      17.     On or about July 19, 2017, TRAN sent S.S., via interstate wire

25 | transmission, an IRS Form W-9 for the purpose of persuading S.S. to submit the

26 | $670,000 invoice to Wasserman.  On the Form W-9, TRAN listed the business name as

27 |

28 |

United States v. Jeff Tran
Indictment - 5

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | "Trade Craft Consulting," and used a fictitious employer identification number and
2 | TRAN's own home address.

3 |      18.    On numerous occasions during July 2017, TRAN sent S.S., via interstate
4 | wire communication, text messages urging S.S. to submit the fraudulent $670,000
5 | invoice to Wasserman.

6 |     **4.**    **TRAN's Attempt to Cover Up His Fraud**

7 |      19.    After S.S. and B.H. became suspicious of TRAN and reported TRAN's
8 | conduct to Microsoft, TRAN provided false information to Microsoft investigators and
9 | destroyed evidence to conceal his fraud.  Specifically, on or about July 27, 2017,
10 | Microsoft investigators questioned TRAN about the fraudulent March 2017 Sandoval
11 | invoice.  TRAN falsely told the investigators he had no knowledge of the invoice, and
12 | denied having received any payments from Sandoval.  When presented with documents
13 | evidencing the fraud, TRAN claimed that he had been "hacked."  To conceal his fraud,
14 | TRAN destroyed text messages between himself and S.S.

15 |      20.    Following his meeting with Microsoft investigators, TRAN instructed S.S.
16 | not to tell Microsoft that S.S. had made the $775,000 payment to TRAN.  TRAN told
17 | S.S. that they needed to agree on a false "story" to tell Microsoft to explain the
18 | circumstances of the payment.  TRAN likewise contacted B.H. and told B.H. that they
19 | needed to meet to discuss how to explain the $775,000 payment.

20 | **C.**    **Execution of the Scheme to Defraud**

21 |      21.    On or about the dates set forth below, at Seattle, within the Western District
22 | of Washington, and elsewhere, for the purpose of executing and attempting to execute
23 | this scheme and artifice to defraud, and to obtain money and property, JEFF TRAN, and
24 | others known and unknown to the Grand Jury, did knowingly transmit and cause to be
25 | transmitted by wire communication in interstate and foreign commerce, writings, signs,
26 | signals, pictures and sounds, each transmission of which constitutes a separate count of
27 | this Indictment:

28 |

United States v. Jeff Tran
Indictment - 6

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Event | Wire Transmission |
|---|---|---|---|
| 1 | 1/23/17 | Delivery of FedEx Airbills from S.Z. to TRAN | Email from New Jersey to Washington |
| 2 | 3/17/17 | Email from TRAN to S.S. Attaching TRAN Form W-9 | Email from Washington to California |
| 3 | 3/21/17 | Deposit of $775,000 Bank America Check into First Tech Bank Account | Wire transmission from Washington to another state |
| 4 | 7/19/17 | Email from TRAN to S.S. Attaching Trade Craft Form W-9 | Email from Washington to California |
| 5 | 7/27/17 | Text message from TRAN to S.S. Requesting Invoice | SMS message from Washington to California |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## ALLEGATION OF FORFEITURE

22.     The allegations contained in Paragraphs 1-21 are hereby incorporated by reference to allege forfeitures to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

23.     Upon conviction of any of the offenses charged in Counts 1-5 of this Indictment, the defendant, Jeff TRAN, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including but not limited to a judgment for a sum of money representing the property described in this paragraph.

24.     Substitute Assets. If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

   a) cannot be located upon the exercise of due diligence;

   b) has been transferred or sold to, or deposited with, a third party;

   c) has been placed beyond the jurisdiction of the Court;

   d) has been substantially diminished in value; or

   e) has been commingled with other property which cannot be divided without difficulty;

United States v. Jeff Tran
Indictment - 7

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   it is the intent of the United States, pursuant to Title 21, United States Code, Section

2   853(p) and Title 28, United States Code, Section 2461(c), to seek the forfeiture of any

3   other property of the defendant up to the value of the above-described forfeitable

4   property.

5

6                                              A TRUE BILL:

7                                              DATED:  10 - 17 - 2018

8

9                                              *[Signature of Foreperson redacted pursuant*
                                               *to the policy of the Judicial Conference of*
10                                             *the United States]*

11                                             _____

12                                             FOREPERSON

13

14   _____
     ANNETTE L. HAYES
15   United States Attorney

16

17

18   _____
     ANDREW C. FRIEDMAN
19   Assistant United States Attorney

20

21   _____
     SETH WILKINSON
22   SETH WILKINSON
23   Assistant United States Attorney

24

25

26

27

28   United States v. Jeff Tran
     Indictment - 8